JOHN E. SAVAGE and JACQUELINE SAVAGE, Petitioners. v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Savage v. Commissioner
Docket No. 7486-80.
United States Tax Court
T.C. Memo 1981-278; 1981 Tax Ct. Memo LEXIS 465; 42 T.C.M. (CCH) 21; T.C.M. (RIA) 81278; June 2, 1981. John E. Savage, pro se. F. Michael Kovach, Jr., for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for trial in accordance with General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts his report which is set out below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge *467 : Respondent determined a deficiency of $ 1,466.36 in petitioners' Federal income taxes for 1976. The issues for decision are: (1) whether an expenditure of $ 810, more particularly described in the Findings of Fact, represents a currently deductible item or a non-deductible capital expenditure; and (2) whether certain claimed business expenses, more particularly described in the Findings of Fact, are deductible in amounts greater than those determined by respondent in his notice of deficiency. FINDINGS OF FACT Some of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein and attached thereto, is incorporated herein by reference. Petitioners are husband and wife. They resided in Michigan at the time they filed their petition in this case. Facts re Issue 1
Petitioners owned a rental property acquired in 1968, located near Brown City, Michigan. On June 28, 1976, a fire broke out in a frame dwelling located on that property. The fire caused extensive damage, but at least the foundation of the building remained intact after the fire. petitioners were insured against fire loss relative to this property. Under their policy, *468 petitioners received $ 19,362 to reimburse them for the fire loss. On August 7, 1976, petitioners paid $ 810 to Richards Roofing & Siding to tear down what remained of the damaged building. The $ 810 represented the amount expended to hire a bulldozer and operator "who tore it [the building] all down and leveled off and * * * filled in [the hole]. Petitioners are in the process of building a new house in a different location on the Brown City property. Petitioners deducted the $ 810 as a repair expense with respect to the Brown City rental property, on Schedule E of their 1976 return. Respondent disallowed that deduction in the notice of deficiency, stating as his reason that said amount represented non-deductible capital expenditure under section 263. [1]
Facts re Issue 2
Petitioner John Savage [2] was an outside salesman, employed by Peninsular Steel Company (hereinafter "Peninsular") of Warren, Michigan. During 1976, petitioner called on tool and die shops, production shops, stamping shops, and similar businesses in the Detroit metropolitan area, *469 mainly suppliers to the automobile industry. Petitioner claimed a deduction of $ 4,079.48, as employee business expenses on Form 2106 attached to the 1976 return. This deduction was allowed in part by respondent. The following tabulation shows the elements making up the claimed deduction, the portions allowed by respondent, and the amounts remaining in dispute: Change
Amount
Deduction Claimed
Per
in
Item
Per Return
Audit
Dispute
50% of Club dues
$ 360.00
$ 0
$ 360.00
Home telephone
100.00
100.00
0
Entertainment
2,800.00
0
2,800.00
Gifts
540.00
0
540.00
Miscellaneous
130.00
0
130.00
Sub-total
$ 3,930.00
$ 100.00
$ 3,830.00
Mileage
2,850.00
1,444.48
1,405.52
Parking
100.00
100.00
0
Sub-total
$ 6,880.00
$ 1,644.48
$ 5,235.52
Less: reimbursement
2,800.52
0
2,800.52
Total
$ 4,079.48
$ 1,644.48
$ 2,435.00
Petitioner had a membership at the Burning Tree Golf and Country Club in Mount Clemens, Michigan during 1976. He frequently entertained officers or employees of his customers at the club, playing golf and treating his *470 guests to food and drinks. Petitioner used the club's facilities on a total of 37 days in 1976. On at least 21 of those days, he used the club's facilities for entertainment purposes directly connected with his business of being a salesman for Peninsular. Petitioner paid monthly dues to the club totaling $ 720 in 1976. Besides entertaining officers and employees of his customers at the club, petitioner also entertained such persons at restaurants and by taking them to sporting events such as the Detroit Lions fottball games. Petitioner maintained a diary for 1976 in which he jotted down the place, time, and amount spent for entertainment. However, the diary does not disclose the "occupation or other information relating to the person or persons entertained, including name, title, or other designation, sufficient to establish business relationship to the taxpayer." (Section 1.274-5(b)(3)(v), Income tax Regs.) Petitioner made gifts (for example, candy, flowers, and cigars) to employees of his customers, such as receptionists and plant foremen. Petitioner kept no records from which it can be determined what persons received what gifts, when the gifts were made, or what the *471 gifts cost. Petitioner was required to make telephone calls from pay telephones from time to time in carrying on his business. His deduction mentioned above, for "miscellaneous" represents his estimate of the amounts expended for such purposes in 1976. Petitioner drove his own car, a Dodge Polara, in his salesman's work in 1976, which obtained an average of 15 miles per gallon of gasoline. The parties have stipulated that during 1976, gasoline sold for at least 60 cents per gallon. Peninsular had arranged with a service station to pay for gasoline used by petitioner. When petitioner required fuel for his car, he would go to the station, have his car's tank filled and sign a receipt for the gasoline. The station would bill Peninsular which paid the amounts so billed. The amount then paid by Peninsular in 1976 was not more than $ 840. Petitioner also purchased gasoline for his car which he paid for himself. The value of the gasoline furnished to petitioner by his employer was not reported as wages on the Form W-2 furnished to petitioner, not was it otherwise reported as income by petitioners on their 1976 return. It was not a part of the $ 2,800.52 reimbursement to petitioner *472 from his employer, which is shown in the tabulation set out above. Petitioner kept a log of business-related mileage which showed that he had driven 18,145 miles on business during 1976. In addition to the business mileage shown in petitioner's log, he drove additional business miles of not less than 2,855 miles. Petitioner claimed a business expense deduction on his 1976 return based upon total business mileage of 21,000 miles. OPINION Issue 1. -- Under this issue, it must be decided whether the $ 810, expended in the circumstances described in the findings, qualifies for deduction. Petitioners deducted that amount as a rental repair expense, presumably relying on section 212(2); while respondent, denying the claimed deduction, asserts that it represents a non-deductible capital expenditure under section 263: It is believed that neither party is correct in the characterization of the expenditure. This completion of the demolition of the house on petitioners' Brown City rental property -- previously largely accomplished by the fire -- appears more properly to fall within the demolition loss category under section 165. Section 1.165-3(b) provides as follows: (b) *473 Intent to demolish formed subsequent to the time of acquisition. (1) * * * The loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. * * * In this case, the adjusted basis of the destroyed house was presumably recovered by petitioners in the $ 19,362 they received under their insurance policy. There is no indication in the record that the $ 810 was included in that reimbursement, and respondent (who is much closer to this case than the Court) has made no argument that it was. Rather, as stated in both his notice of deficiency and in his trial memorandum, his position is only that the $ 810 represents a capital expenditure to be added to the cost of the new replacement building being constructed by petitioners. That would be a correct position if this were a case where the *474 intent to demolish had been formed at the time petitioners acquired the Borwn City rental property (see section 1.165-3(a), Income Tax Regs.) -- which clearly it is not. Petitioners are entitled to the deduction under section 165(c)(2), and they are sustained on this issue. Issue 2. -- (a) Country club dues. -- The record establishes that petitioner's entertaining of the officers and employees of his customers was an ordinary and necessary expense directly related to his business as a steel salesman for Peninsular. The question is: Has petitioner established that the "primary use of the facility [i.e., the country club] during the taxable year was for purposes considered ordinary and necessary"? (Section 1.274-2(e)(4)(i), Income Tax Regs.) Section 1.274-2(e)(4)(iii), Income Tax Regs., provides that a taxpayer shall be deemed to have established such primary use "if he establishes that more than 50 percent of the total calendar days of use of the facility * * * were days of business use." Petitioner's records reveal that the club was used for business entertainment on at least 21 of the total of 37 calendar days of use in 1976. He therefore is entitled to deduct the *475 one-half of his club dues as claimed on his return,. as an item with respect to a facility directly related to his trade or business. (b) Entertainment. -- There can be no doubt that petitioner expended money entertaining officers and employees of his customers, and the money so expended constitutes an ordinary and necessary expense under section 162. Unfortunately for petitioner, that is not the end of the matter. Petitioner is still faced with the substantiation requirements of section 274(d) and section 1.274-5(b)(3), Income Tax Regs.
The cited regulation, sustained by this Court in Sanford v. Commissioner, 50 T.C. 823 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969), provides with respect to the elements of an entertainment expense to be proved, by adequate records or by sufficient evidence collaborating the taxpayer's statement, as follows (section 1.274-5(b)(3)): (3) Entertainment in general. Elements to be proved with respect to an expenditure for entertainment are -- (i) Amount. Amount of each separate expenditure for entertainment, except that such incidental items as *476 taxi fares or telephone calls may be aggregated on a daily basis; (ii) Time. Date of entertainment; (iii) Place. Name, if any, address or location, and designation of type of entertainment, such as dinner or theater, if such information is not apparent from the designation of the place; (iv) Business purpose. Business reason for the entertainment or nature of business benefit derived or expected to be derived as a result of the entertainment and, except in the case of business meals described in section 274(e)(1), the nature of any business discussion or activity; (v) Business relationship. Occupation or other information relating to the person or persons entertained, including name, title, or other designation, sufficient to establish business relationship to the taxpayer. A close examination of the diary maintained by petitioner reveals that the entries made by petitioner suffice, in most instances, to prove all of the elements, with the exception of (v). The entries for most occasions show the names of customer companies, but do not contain the names of the officers or employees entertained; with respect to a few occasions, there are the names of *477 the persons entertained but not the names of the companies with which the persons were connected. Moreover, it is noted that petitioner's claimed deduction for entertainment was $ 2,800.00 and his reimbursement from Peninsular was $ 2,800.52. Although the composition of the reimbursement is not established in the record, there is nevertheless a strong suggestion that petitioner has been reimbursed for his entertainment expenses by his employer. In these circumstances, respondent's disallowance of the $ 2,800 deduction claimed for entertainment must be sustained. (c) Gifts. -- Here again, there can be little, if any, doubt that petitioner made gifts to employees of his customers, as he testified that he did and that the amount he expended for such gifts would constitute an ordinary and necessary business expense. But, here again he is confronted with the substantiation requirements of the regulations. Section 1.274-5(b)(5), Income Tax Regs. provides as follows: (5) Gifts. Elements to be proved with respect to an expenditure for a gift are: (i) Amount. Cost of gift to taxpayer. (ii) Time. Date of gift. (iii) Description. Description of gift.
*478 (iv) Business purpose. Business reason for the gift or nature of the business benefit derived or expected to be derived as a result of the gift; and (v) Business relationship. Occupation or other information relating to the recipient of the gift, including name, title, or other designation, sufficient to establish business relationship to the taxpayer. Insofar as the gifts are concerned, the only evidence substantiating them is petitioner's very generaly testimony and a cryptic entry in his diary of $ 540.00 for Christmas gifts. This falls far short of substantiating by adequate records or by sufficient evidence collaborating his own statement the elements required to be proved for each gift which petitioner made. Respondent must be sustained on his disallowance of the $ 540 deduction claimed by petitioner for gifts. (d) Miscellaneous. -- The $ 130 claimed as a deduction by petitioner for this item appears to be for amounts for telephone calls claimed to have been made from pay stations, during the course of his work. Being satisfied that petitioner expended money for this purpose and in the belief that these local telephone expenses are not within the category *479 of travel expenses subject to the substantiation requirements of section 274 and the regulations thereunder, it is found and held that petitioner expended $ 50 for telephone calls in 1976. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Petitioner will be allowed $ 50 as a deduction in the computation under Rule 155. (e) Mileage. -- The evidence is persuasive that petitioner did drive his car for business purposes farther than the 18,145 miles recorded in his log. It is found that his total business mileage for 1976 was not less than the 21,000 miles claimed on his return. His employer purchased some, probably most, of the gasoline used in petitioner's driving for business purposes. It is found that the employer expended not more than $ 840 for this purpose. Petitioner's otherwise allowable deduction for mileage must be reduced by that amount. In the computation under Rule 155 he will be allowed a deduction of $ 2,010 (15,000 miles at 15 cents per mile ($ 2,250) plus 6,000 miles at 10 cents per mile ($ 600), less $ 840 paid for gasoline by his employer). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The term petitioner, in the singular, will have reference to John Savage.↩